# In the United States Court of Federal Claims
## OFFICE OF SPECIAL MASTERS
### No. 17-1179V
Filed: January 2, 2024

```
* * * * * * * * * * * * * *   *
MAUREEN C. CLAVIO,                *
                                  *
          Petitioner,             *
v.                                *
                                  *
SECRETARY OF HEALTH               *
AND HUMAN SERVICES,               *
                                  *
          Respondent.             *
                                  *
                                  *
* * * * * * * * * * * * * *   *
```

*Leah Durant, Esq.*, Law Offices of Leah V. Durant, PLLC, Washington, DC, for petitioner.
*Debra Begley, Esq.*, U.S. Department of Justice, Washington, DC, for respondent.


## DECISION ON ATTORNEYS' FEES AND COSTS[1]


**Roth**, Special Master:

On August 31, 2017, Maureen Clavio ("Ms. Clavio") filed a petition for compensation pursuant to the National Vaccine Injury Compensation Program.[2] The petition alleges that Ms. Clavio suffered a left shoulder injury caused in fact by the tetanus, diphtheria, acellular pertussis ("Tdap") vaccine she received on February 2, 2012. Petition at ¶¶ 1, 10, ECF No. 1.

Petitioner filed her petition following a revision to the Vaccine Injury Table which listed SIRVA as an on-Table injury, effective for petitions filed beginning on March 21, 2017. *See* National Vaccine Injury Compensation Program: Revisions to the Vaccine Injury Table, Final

---

[1] Because this decision contains a reasoned explanation for the action taken in this case, it must be made publicly accessible and will be posted on the United States Court of Federal Claims' website, and/or at https://www.govinfo.gov/app/collection/uscourts/national/cofc, in accordance with the E-Government Act of 2002. 44 U.S.C. § 3501 note (2018) (Federal Management and Promotion of Electronic Government Services). **This means the decision will be available to anyone with access to the internet.** In accordance with Vaccine Rule 18(b), petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, the undersigned finds that the identified material fits within this definition, such material will be redacted from public access.

[2] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755. Hereinafter, for ease of citation, all "§" references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2018).

Rule, 82 Fed. Reg. 6294 (Jan. 19, 2017); National Vaccine Injury Compensation Program: Revisions to the Vaccine Injury Table, Delay of Effective Date, 82 Fed. Reg. 11321 (Feb. 22, 2017) (delaying the effective date of the final rule until March 21, 2017).

Following a factual finding that the onset of petitioner's left shoulder pain occurred approximately two months post-vaccination,[3] petitioner requested an entitlement decision be issued on the record. ECF Nos. 41, 43-44. A Decision dismissing the petition was issued on February 16, 2022. ECF No. 47.

Petitioner filed a Motion for Attorneys' Fees and Costs on September 19, 2022. Motion for Fees, ECF No. 50. Respondent filed his Response raising reasonable basis on October 7, 2022. Response, ECF No. 53. Petitioner filed a Reply on December 2, 2022. Reply, ECF No. 57.

Petitioner seeks a total award of **$20,405.30**. Motion for Fees at 1, 7. The motion confirms that no costs are being sought. Further, petitioner's General Order No. 9 was filed on September 26, 2022, advising that petitioner did not incur any costs. ECF No. 51. After careful consideration, petitioner's Motion for Attorneys' Fees and Costs is **GRANTED** for the reasons set forth below.

## I.      Relevant Procedural History[4]

Petitioner filed her petition as a *pro se* litigant on August 31, 2017. ECF No. 1. She was encouraged to seek counsel but remained unrepresented for a year until Attorney Leah Durant substituted as counsel. Order issued Sept. 5, 2017, ECF No. 5 (providing a list of attorneys commonly appearing in the Vaccine Program); Consented Motion to Substitute Leah V. Durant as Counsel, filed Aug. 30, 2018, ECF No. 25.

Following the filing of her petition, petitioner filed medical records from her primary care physician, neurologist, orthopedist, chiropractor, and dentist, a letter from her primary care provider as a supplement to the information contained in his medical records, and her affidavit. Pet. Ex. 1-8, ECF No. 7.

During a recorded status conference held on November 1, 2017, the weight given contemporaneously created medical records was discussed as were the weaknesses in petitioner's case. ECF No. 10. Specifically noted was petitioner's receipt of the subject vaccination on February 2, 2012; her reported onset of symptoms as April 2012 to her medical providers as documented in the medical records; no treatment for her left shoulder pain sought until June 2012; and no return for treatment again until February 2013. *Id*. Petitioner was encouraged to file additional medical records or affidavits to support her claim of immediate onset of left shoulder pain upon receipt of the vaccination. *Id.*

---

[3] *Clavio v. Sec'y of Health & Hum. Servs.,* No. 17-1179V, 2020 WL 1672956 (Fed. Cl. Spec. Mstr. Mar. 11, 2020). I will refer to this Ruling as my "Ruling on Onset" throughout this Decision.

[4] A detailed procedural history from the petition filing date through early March 2020 can be found in my Ruling on Onset issued on March 11, 2020. *Clavio*, 2020 WL 1672956, at *1-3.

On November 7, 2017, petitioner filed letters from two co-workers at the high school where she worked: David Kreis, the school's athletic trainer, and Nancy Cassidy, the school nurse. Pet. Ex. 8-9, ECF No. 11.[5] Both letters were signed but not notarized, and Ms. Cassidy's letter was dated April 26, 2017. *Id.* In December 2017, petitioner filed signed and notarized letters from her mother, Florine Martin; husband, Wayne Clavio; a former co-worker, Yolanda Kolliniatis; and a friend, Jeannie Murawski. Pet. Ex. 10-13, ECF Nos. 12-13. These letters were dated in November and December of 2017. *Id.*

On April 9, 2018, respondent filed a status report, stating that he would continue to defend this case, proposing a 45-day deadline for his Rule 4(c) Report, and requesting that petitioner file all records from her primary care provider for the two years prior to vaccination. ECF No. 17. Petitioner filed the additional primary care provider records on June 6, 2018. Pet. Ex. 14, ECF No. 21.

Respondent filed his Rule 4(c) Report on June 28, 2018. Respondent's Report, ECF No. 22. He submitted that petitioner's alleged injury did not fit the criteria for SIRVA because petitioner did not provide evidence that her pain began within 48 hours of vaccination or that she suffered pain and reduced range of motion limited to her left shoulder. *Id.* at 12-14 (citing the second and third Qualifications and Aids to Interpretation ("QAI") listed at 42 C.F.R. § 100.3(c)(10)(ii)-(iii)). Respondent maintained that the later provided letters and affidavits were not sufficient to counter entries in the contemporaneously created medical records, which described a later onset for petitioner's left shoulder pain. *Id.* at 13-14. Additionally, multiple medical records indicated that petitioner reported pain in her temple and neck and retained full range of motion of her shoulder throughout her alleged injury. *Id.* at 14.

Respondent further submitted that petitioner "ha[d] failed to present a prima facie case of actual causation." Respondent's Report at 14-15. Specifically, petitioner failed to provide evidence of an appropriate temporal relationship between vaccination and the onset of her left shoulder pain and failed to show "that the February 2, 2012 Tdap vaccination caused her [to] develop SIRVA, or any other injury." *Id.* at 15.

During a second recorded status conference on July 31, 2018, petitioner advised that she had not hired an attorney but was receiving filing and strategy assistance from a vaccine attorney. Order at 1, issued Aug. 1, 2018, ECF No. 24. The weight given to contemporaneously created medical records, the lack of evidence supporting petitioner's claim of left shoulder pain within 48 hours of vaccination, and the atypical symptoms she suffered were again discussed. *Id.* at 1-2. Petitioner was advised of the various ways to exit the Vaccine Program. *Id.* at 2.

On August 30, 2018, Attorney Durant entered her appearance as petitioner's counsel and filed a status report advising of her intent to file a Motion for a Ruling on the Record addressing the onset issue. ECF No. 27. Petitioner filed her motion on December 3, 2018, and the parties completed all briefing by June 13, 2019. ECF Nos. 31, 34, 38. On March 11, 2020, I issued my

---

[5] Both petitioner's statement and Mr. Kreis's statement were filed as Pet. Ex. 8. In his Rule 4(c) Report, respondent referenced petitioner's statement as Pet. Ex. 8 and Mr. Kreis's statement as Pet. Ex. 8.2 to avoid confusion. Petitioner adopted these citations for her motion. For continuity purposes, I will adopt these citations as well.

Ruling on Onset, determining that petitioner's left shoulder pain began in April 2012, two months after receipt of the subject vaccination. ECF No. 39.

Thereafter, on April 13, 2020, petitioner filed a status report requesting additional time to supplement the record and proposing that I then issue a decision on entitlement. ECF No. 41. She filed medical literature on April 30, 2020. Pet. Ex. 15-19, ECF No. 42. Petitioner requested a decision on the record as it currently stood in a status report filed on June 1, 2020. ECF No. 43. Pursuant to my instruction, she filed a Second Motion for a Ruling on the Record on August 31, 2020, providing specific arguments regarding entitlement and asserting that she had provided sufficient evidence to establish causation. ECF No. 44.

Respondent filed a response to petitioner's motion, maintaining that petitioner was not entitled to compensation. ECF No. 46. Specifically, he submitted that, given my finding regarding onset, petitioner cannot satisfy the requirements for a Table SIRVA injury and her non-Table claim was barred by the statute of limitations. *Id*. at 14. He further submitted that, even if I found the Vaccine Act's "lookback provision" applied and the claim was not untimely filed, petitioner had failed to establish sufficient evidence of causation. *Id.* Petitioner did not file a reply.

For the reasons more specifically set forth therein, on February 16, 2022, I issued a Decision dismissing the petition.[6]

## II.     Discussion

The Vaccine Act permits an award of "reasonable attorneys' fees" and "other costs." § 15(e)(1). If a petition results in compensation, petitioner is entitled to reasonable attorneys' fees and costs. *Id.*; *see Sebelius v. Cloer*, 569 U.S. 369, 373 (2013). Where a petitioner does not prevail on entitlement, a special master has discretion to award reasonable fees if the petition was brought in "good faith" and with a "reasonable basis" for the claim to proceed. § 15(e)(1). A petitioner's good faith is presumed "in the absence of direct evidence of bad faith." *Grice v. Sec'y of Health & Human Servs.*, 36 Fed. Cl. 114, 121 (1996). Where no evidence of bad faith exists and respondent does not challenge petitioner's good faith, good faith requires no further analysis. In the instant case, the undersigned has no reason to believe, and respondent does not argue, that petitioner did not bring her claim in good faith. Response at 4. Therefore, the undersigned finds that petitioner brought her claim in good faith.

### A.  Reasonable Basis

#### 1.  Legal Standard

In discussing the reasonable basis requirement, the Federal Circuit stressed the prima facie petition requirements of § 11(c)(1) of the Act. *Cottingham ex. rel. K.C. v. Sec'y of Health & Human Servs.*, 971 F.3d 1337, 1345-46 (Fed. Cir. 2020). Specifically, the petition must be accompanied by an affidavit and supporting documentation showing that the petitioner:

---

[6] *Clavio v. Sec'y of Health & Hum. Servs.,* No. 17-1179V, 2022 WL 1078175 (Fed. Cl. Spec. Mstr. Feb. 16, 2022). Hereinafter, this will be referred to as the "Dismissal Decision" throughout this Decision.

(1) received a vaccine listed on the Vaccine Injury Table;

(2) received the vaccination in the United States, or under certain stated circumstances outside of the United States;

(3) sustained (or had significantly aggravated) an injury as set forth in the Vaccine Injury Table (42 C.F.R. § 100.3(e)) or that was caused by the vaccine;

(4) experienced the residual effects of the injury for more than six months, died, or required an in-patient hospitalization with surgical intervention; and

(5) has not previously collected an award or settlement of a civil action for damages for the same injury.

*Cottingham*, 971 F.3d at 1345-46.

Reasonable basis is an objective inquiry, irrespective of counsel's conduct or a looming statute of limitations, that evaluates the sufficiency of records available at the time a claim is filed. *Simmons v. Sec'y of Health & Human Servs.*, 875 F.3d 632, 636 (Fed. Cir. 2017); *see Turpin v. Sec'y of Health & Human Servs.*, No. 99-564, 2005 WL 1026714 at *2 (Fed. Cl. Spec. Mstr. Feb. 10, 2005). A special master's evaluation of reasonable basis focuses on the requirements for a petition under the Vaccine Act to determine if the elements have been asserted with sufficient objective evidence to make a feasible claim for recovery. *Santacroce v. Sec'y of Health & Human Servs.*, No. 15-555V, 2018 WL 405121 at *7 (Fed. Cl. 2018).

Reasonable basis is satisfied when there is more than a mere scintilla of objective evidence, such as medical records or medical opinions, supporting a feasible claim before filing. *See Cottingham*, 971 F.3d at 1346; *see Chuisano v. Sec'y of Health & Human Servs.*, 116 Fed. Cl. 276, 286 (2014) (citing *McKellar v. Sec'y of Health & Human Servs.*, 101 Fed. Cl. 303, 303 (2011)); *see Silva v. Sec'y of Health & Human Servs.*, 108 Fed. Cl. 401, 405 (2012). A recent attempt to clarify what quantifies a "scintilla" looked to the Fourth Circuit, which characterized "more than a mere scintilla of evidence" as "'evidence beyond speculation that provides a sufficient basis for a reasonable inference of causation.'" *Cottingham v. Sec'y of Health & Human Servs.*, 154 Fed. Cl. 790, 795 (2021) (*quoting Sedar v. Reston Town Ctr. Prop., LLC*, 988 F.3d 756, 765 (4th Cir. 2021)). Additionally, absence of an express medical opinion of causation is not necessarily dispositive of whether a claim has a reasonable basis. Medical records may support causation even where the records provide only circumstantial evidence of causation. *James-Cornelius on Behalf of E.J. v. Sec'y of Health & Human Servs.*, 984 F.3d 1374, 1379-80 (Fed. Cir. 2021).

Evaluation of reasonable basis is limited to the objective evidence submitted. *Simmons*, 875 F.3d at 636. Still, a special master is not precluded from considering objective factors such as "the factual basis of the claim, the medical and scientific support for the claim, the novelty of the vaccine, and the novelty of the theory of causation." *Amankwaa v. Sec'y of Health & Human Servs.*, 138 Fed. Cl. 282, 289 (2018). In *Cottingham*, the Federal Circuit expressly clarified that special masters are permitted to utilize a totality of the circumstances inquiry in evaluating reasonable basis, including, but not exclusively limited to, objective factors such as those identified in *Amankwaa*. *See Cottingham*, 971 F.3d at 1344. The Federal Circuit reiterated that counsel's conduct is subjective evidence not to be considered when evaluating reasonable basis. *Id*. at 1345. Counsel's attempt or desire to obtain additional records before filing is subjective evidence and

does not negate the objective sufficiency of evidence presented in support of a claim. *James-Cornelius*, 984 F.3d at 1381. The Federal Circuit has additionally articulated that special masters cannot broadly categorize all petitioner affidavits as subjective evidence or altogether refuse to consider petitioner's sworn statements in evaluating reasonable basis. *Id.* at 1380 (holding that factual testimony, when corroborated by medical records and a package insert, can amount to relevant objective evidence for supporting causation). However, a petitioner's own statements cannot alone support reasonable basis, and special masters may make factual determinations as to the weight of evidence. *See, e.g.*, *Chuisano*, 116 Fed. Cl. at 291; *Foster v. Sec'y of Health & Human Servs.*, No. 16-1714V, 2018 WL 774090, at *3 (Fed. Cl. Spec. Mstr. Jan. 2, 2018); *Cottingham*, 971 F.3d at 1347.

While absent or incomplete records do not strictly prohibit a finding of reasonable basis, an overwhelming lack of objective evidence will not support reasonable basis. *Chuisano*, 116 Fed. Cl. at 288; *see Simmons*, 875 F.3d at 634-36 (holding that reasonable basis was not satisfied where 1) petitioner's medical record lacked proof of vaccination and diagnosis and 2) petitioner disappeared for two years before filing a claim). The objective evidence in the record must also not be so contrary that a feasible claim is not possible. *Cottingham*, 154 Fed. Cl. at 795, citing *Randall v. Sec'y of Health & Human Servs.*, No. 18-448V, 2020 WL 7491210, at *12 (Fed. Cl. Spec. Mstr. Nov. 24, 2020) (finding no reasonable basis when petitioner alleged a SIRVA injury in his left arm though the medical records indicated that the vaccine was administered in petitioner's right arm). A claim may lose reasonable basis as it progresses if further evidence is unsupportive of petitioner's claim. *See R.K. v. Sec'y of Health & Hum. Servs.*, 760 F. App'x 1010, 1012 (Fed. Cir. 2019) (citing *Perreira v. Sec'y of Health & Human Servs.*, 33 F.3d 1375, 1376–77 (Fed. Cir. 1994)).

Though a special master has broad discretion, a special master must keep in mind the Vaccine Act's remedial objective of maintaining petitioners' access to willing and qualified legal assistance, and a special master may not abuse their discretion in denying reasonable basis and fees. *See James-Cornelius*, 984 F.3d at 1381.

## B. The Parties' Arguments

### 1. Petitioner's Motion for Attorneys' Fees and Costs

Petitioner filed her Motion for Attorneys' Fees and Costs on September 19, 2022, requesting $20,405.30 in fees but no costs. Motion for Fees at 1, 7; *see also* General Order No. 9, ECF No. 51.

### 2. Respondent's Response

Respondent opposed the Motion for Attorneys' Fees for petitioner's failure to establish a reasonable basis for her claim. Response at 1. Respondent did not challenge petitioner's good faith in bringing the petition. *Id*. at 4.

Respondent argued that the facts and evidence in this case show that petitioner's claim never had a reasonable basis. Response at 7. Respondent argued that petitioner's affidavits were

inconsistent with her medical records, conclusory in nature, lacked the necessary foundation, and did not provide sufficient objective evidence to support reasonable basis when considering the record as a whole. *Id*. at 7-8.

Specifically, respondent argued that petitioner's medical records show that her shoulder pain began two months after her February 2, 2012 Tdap vaccination. Respondent acknowledged the letter submitted by petitioner's physician Dr. Boll which stated that petitioner mentioned her shoulder pain during her February 27, 2012 visit, but that Dr. Boll admitted he did not have access to petitioner's prior records to check the accuracy of the dates mentioned. Response at 7; *see* Pet. Ex. 7 at 2. Further, respondent pointed out that petitioner did not see Dr. Boll at the February 27, 2012 visit but saw a different provider at the practice. Response at 7; Pet. Ex. 7 at 12. Petitioner's evidence failed to support a key element required for a Table SIRVA claim requiring onset within 48 hours of vaccination. Response at 7-8.

Additionally, respondent argued that the petition was filed five years after the onset of petitioner's injury and not within 36 months of the "date of the occurrence of the first symptom or manifestation of onset…of such injury." Response at 8; § 16(a)(2). However, § 16(b) provides for an exception called the "lookback provision" when the Vaccine Injury Table is revised:

> …the effect of such revision is to permit an individual who was not, before such revision, eligible to seek compensation under the Program, or to significantly increase the likelihood of obtaining compensation, such person may . . . file a petition for compensation not later than 2 years after the effective date of the revision. § 300aa-16(b).

This provision allows otherwise untimely claims to proceed as timely when asserted in a defined timeframe after an amendment to the Table. Response at 8.

Relevant here is the fact that the Table was revised to include SIRVA; as such, petitioner's claim was subject to the lookback provision and was limited to an on-Table SIRVA claim. Response at 8. Her causation-in-fact argument was time barred and "petitioner never provided any argument stating that her causation-in-fact claim was timely. Thus, it was clear at all times during proceedings that petitioner's claim was unlikely to succeed." *Id*. at 9.

Finally, even if petitioner's causation-in-fact claim was timely, the Court's decision explained that substantial evidence in the record showed that petitioner's injury was not characterized as a shoulder injury and her symptoms included pain that began in her temple and then in her neck and shoulder. Response at 9. The record from petitioner's visit to the orthopedist on June 29, 2012 documented no objective shoulder dysfunction and that her symptoms did not "correlate well with a shoulder problem." *Id*.; Pet. Ex. 5 at 12. Respondent argued that "the medical record here made clear at the outset that petitioner was unlikely to succeed on either a SIRVA Table injury claim or causation-in-fact injury." Response at 9.

Respondent further argued that attorneys' fees and costs have been denied in "lookback" cases where no objective evidence supported the claim. Response at 9, citing *Etheridge v. HHS*, No. 18-0411, 2022 WL 30112514 (Fed. Cl. Spec. Mstr. June 28, 2022); *Gumm v. HHS*, No. 19-

421V, 2020 WL 917050 (Fed. Cl. Spec. Mstr. Jan 21, 2020); *Bonsall v. HHS*, No. 19-420, 2020 WL 1503276 (Fed. Cl. Spec. Mstr. Feb. 20, 2020) (all involving attorneys' fees and costs denied in flu vaccine/Table GBS "lookback" cases where there was no objective evidence in the record to establish the feasibility of the claim, in that petitioner had never been diagnosed with GBS). Only cases in which "some objective" and "reasonable evidence" establishing the Table requirements were attorneys' fees and costs paid. Response at 9-10, citing *Christensen v. HHS*, No. 18-1477, 2022 WL 1055528 (Fec. Cl. Spec. Mstr. Mar. 14, 2022) (noting that the record did not establish a "crystal clear" onset of petitioner's shoulder pain, but there was at least some objective evidence supporting petitioner's claim).

Respondent argued that the only provider who associated petitioner's vaccination with her shoulder injury was her chiropractor who was informed by petitioner that her vaccine was in April 2012 rather than February of 2012. Response at 10; Pet. Ex. 47 at 14. "Thus, a careful review of the records filed…made clear that there was no reliable, objective evidence that would support petitioner's claims." Response at 10.

Respondent concluded that the objective evidence did not provide for a reasonable basis for the claim but rather showed that petitioner never had SIRVA, and any off-Table claim was barred by the statute of limitations. Response at 10. Therefore, petitioner's claim lacked reasonable basis when filed and never established reasonable basis thereafter. *Id*. at 11. Thus, petitioner's Motion for Fees should be denied. *Id*.

### 3. Petitioner's Reply

Petitioner adopted and incorporated by reference the facts and procedural history in the Court's Ruling on Onset and Dismissal Decision. Reply at 1-2.

Petitioner referenced her Motion for Ruling on Onset in which she argued that the onset of her shoulder pain was within 48 hours and that her medical records were incorrect. She further argued that the statements she submitted combined with a February 11, 2013 record from her chiropractor provided sufficient support for her claim and should be given greater weight than her medical records documenting onset in April 2012. Reply at 3.

Following the Ruling on Onset, which found the onset of petitioner's shoulder symptoms to be in April 2012, petitioner filed medical literature and a Second Motion for a Ruling on the Record. Reply at 3-4. Respondent responded to the motion, arguing that petitioner did not satisfy a SIRVA claim and her non-table claim was barred by the statute of limitations. *Id*. at 4. On February 16, 2022, a decision issued dismissing the petition. *Id*.

In support of her Motion for Attorneys' Fees, petitioner argued that "[t]he only disputed issue is whether petitioner's Table SIRVA claim possessed *sufficient* evidence to satisfy the Act's reasonable basis requirement." Reply at 6 (emphasis in original). Petitioner submitted that while her SIRVA claim was ultimately unsuccessful, it possessed sufficient objective evidentiary basis to warrant the discretionary award of attorneys' fees. *Id*.

To that end, petitioner argued that she submitted more than a scintilla of objective evidence in the form of affidavits and medical records that showed she suffered a Table SIRVA and the onset of her pain occurred within 48 hours of her receipt of the vaccine on February 2, 2012. Reply at 7. "However, having weighed that evidence against other evidence in the record, the Special Master determined that the onset of petitioner's SIRVA occurred in April 2012." *Id*. The Special Master determined that petitioner's affidavit and witness statements were insufficient to overcome the presumption of accuracy afforded to contemporaneous medical records. *Id*. The deficiency of petitioner's Table claim turned on the fact that onset occurred more than 48 hours after vaccination. *Id*. at 8.

Petitioner noted that she does not have to prove the likelihood of success in order to show reasonable basis; rather, reasonable basis is based on the feasibility of the claim and her evidence does not need to rise to the level of preponderance. Reply at 7, citing *Woods v. HHS,* No. 10-377V, 2012 WL 4010485, at *6-7 (Fed. Cl. Spec. Mstr. Aug. 23, 2012); *Di Roma v. HHS,* No. 90-3277V, 1993 WL 496981, at *1 (Fed. Cl. Spec. Mstr. Nov. 18, 1993).

Petitioner argued that some SIRVA cases are not crystal clear, allowing for a reasonable possibility that the onset requirement was met and ultimately requiring the special master to delve into the record to ascertain so. Reply at 8, citing *Christensen*, No. 18-1477V, 2022 WL 1055528, at *3. Petitioner argued that respondent's attempts to distinguish the facts of this case from *Christensen* (finding reasonable basis and awarding attorney's fees in an unsuccessful Table SIRVA "lookback" case) are unavailing. There, the Chief Special Master found the case possessed reasonable basis because the "facts of injury and vaccination were established, and the claim's Table deficiency turned on the fact that onset preceded vaccination." Reply at 8-9 note 6.

Finally, petitioner argued that the dismissal of her Table SIRVA lookback claim did not deprive her causation-in-fact claim of reasonable basis as a matter of law. Reply at 9, citing *Simpson v. HHS*, No. 17-0944V, 2019 WL 11815360 (Fed. Cl. Spec. Mstr. Aug. 7, 2019) (finding the lookback provision applied to a non-Table claim). Petitioner filed some evidence in support of her off-Table claim. Reply at 9; Pet. Ex. 16 (an article explaining onset of shoulder injuries can be as late as two months after vaccination).

Petitioner concluded that petitioner filed her petition in good faith and with a reasonable basis and therefore attorneys' fees should be granted. Reply at 9.

### III.    Analysis of Reasonable Basis

To establish a reasonable basis for attorneys' fees, the burden is lower than the preponderant evidence standard required to prove entitlement to compensation. *Cottingham ex. rel. K.C. v. Sec'y of Health & Human Servs*., 971 F.3d 1337, 1345-46 (Fed. Cir. 2020). Petitioner must provide more than a mere scintilla of evidence, defined as "evidence beyond speculation that provides a sufficient basis for a reasonable inference of causation*." Cottingham v. Sec'y of Health & Human Servs.*, 154 Fed. Cl. 790, 795 (2021) (*quoting Sedar v. Reston Town Ctr. Prop., LLC*, 988 F.3d 756, 765 (4th Cir. 2021)).

The issue here is whether more than a scintilla of evidence existed for petitioner's filing of and maintaining her SIRVA claim until it was dismissed. Because petitioner moved for Ruling on the Record immediately following the finding that her symptoms began two months after receipt of the subject vaccination, only the arguments related to petitioner's Table SIRVA claim will be addressed.

Petitioner initially appeared *pro se* but advised that she was receiving filing and strategy assistance from a vaccine attorney. ECF No. 24. Petitioner filed her medical records, which showed the following:[7] petitioner received a Tdap vaccine in her left arm on February 2, 2012 at Dr. Boll's office. Pet. Ex. 1 at 1; Pet. Ex. 4 at 10; Pet. Ex. 14 at 5. She returned to Dr. Boll's office on February 27, 2012 and was seen by a nurse practitioner for upper respiratory complaints. Pet. Ex. 4 at 13, 14-15; Pet. Ex. 14 at 6-7. Petitioner faxed bloodwork to Dr. Boll on May 3, 2012 and asked Dr. Boll to call her to discuss the results. Pet. Ex. 4 at 72; Pet. Ex. 14 at 9. Petitioner presented to her dentist on May 10 and May 23, 2012 for TMJ pain. Pet. Ex. 6 at 1. There was no mention in the records of left arm/shoulder pain.

Petitioner's first visit for left shoulder pain was to Dr. Boll on June 13, 2012. She reported left shoulder pain and left-sided temporal pain for two months. Pet. Ex. 4 at 9; Pet. Ex. 14 at 12. She also reported a headache that was mild to moderate with no relief from Advil or Flexeril prescribed by her dentist. Pet. Ex. 4 at 9. She complained of difficulty raising her left arm but had no weakness and only mild associated posterior left neck pain. *Id*. She had full range of motion of the cervical spine and left shoulder with some pain posteriorly on examination. *Id*. at 12; Pet. Ex. 14 at 14. Dr. Boll suspected tendinitis[8] leading to compensatory neck muscle pain. *Id*. He referred her for a physical therapy evaluation. *Id*. There was no mention of the Tdap vaccine.

On June 18, 2012, petitioner presented to orthopedist Dr. Regan with complaints of left temple pain down into her shoulder with "spontaneous onset." Pet. Ex. 2 at 3. Examination revealed no tenderness around the left shoulder, full range of motion, good circulation, good sensation, and good motor function to her arm and hand. *Id*. An x-ray was "unremarkable." *Id*. Dr. Regan noted "[n]ot sure this correlates well with a shoulder problem, but it is peculiar that this radiates from her shoulder up to her temple area." *Id*. She was advised to see a neurologist. *Id*. There was no mention of the Tdap vaccine.

A record signed by Dr. Regan[9] bearing "6-2012" documented a telephone call from petitioner: "[T]he patient called back and talked with me today and she wanted it mentioned in the chart that she may be **ALLERGIC TO TETANUS-DIPHTHERIA-PERTUSSIS** injection, so we will make sure that in the future we do not give her any of those injections, but we do not do that at this office." Pet. Ex. 7 at 2 (emphasis in original). This was the first time petitioner mentioned the Tdap vaccine to a medical provider.

---

[7] A detailed medical history is contained in the Ruling on Onset.

[8] Tendinitis is inflammation of tendons and of tendon-muscle attachments. Dorland's Medical Dictionary Online, *Tendinitis* (last visited Dec. 28, 2023), https://www.dorlandsonline.com/dorland/definition?id=49150.

[9] This record was not filed with the records from Dr. Regan's office (Pet. Ex. 2). Rather, this record was filed with the letter from Dr. Boll as Pet. Ex. 7.

On June 29, 2012, petitioner presented to neurologist Dr. Mayer, complaining of head pain that radiated down to her shoulder. Pet. Ex. 5 at 10; Pet. Ex. 4 at 32; Pet. Ex. 14 at 15. She described pain over the left temple, left neck, and left shoulder. Pet. Ex. 5 at 10. Petitioner reported that the pain started in her left neck or temple "around Easter time in April" and later became associated with pain in her left shoulder. *Id*. She felt all three areas of pain were related. *Id*. Petitioner reported that the pain was present "to some degree on a daily basis, but can be relatively mild at times." *Id*. She had not lost any function and "recently hiked up a mountain in Colorado" and continued to golf. *Id*. There was no associated weakness in her arm. *Id*. An x-ray of her left shoulder was unremarkable. *Id*. Examination revealed normal range of motion with pain on abduction and external rotation of the left shoulder which radiated to her temple. *Id*. at 11; Pet. Ex. 4 at 33; Pet. Ex. 14 at 16. X-rays of her cervical spine showed lordosis in the neck, possibly due to muscle spasm and slight disc narrowing at C3-4 but no other significant findings. Pet. Ex. 5 at 12; Pet. Ex. 4 at 34; Pet. Ex. 14 at 17. Dr. Mayer's assessment was neck strain which was mainly muscular and involved the trapezius and temporalis muscles. Pet. Ex. 5 at 12. She was prescribed gabapentin and instructed to follow-up in four to six weeks. *Id*.; Pet. Ex. 4 at 34-35; Pet. Ex. 14 at 17-18. There was no mention of the Tdap vaccine.

Petitioner's next medical visit was eight months later on February 11, 2013, when she presented to chiropractor Dr. Cleofe with complaints of pain in her left arm, neck, and temple area, along with pain from her left hip to the knee. Pet. Ex. 3 at 4. She described the shoulder, neck, and temple pain as aching and stiff, while the pain in her hip and knee was sharp. *Id*. Petitioner reported that in April 2012, she awoke with pain in her left temple; she later noticed it in her left arm and neck, and it was progressing to her right upper arm as well. *Id*. at 11. She had not missed any work due to her symptoms and reported that it affected her life "mildly," but she did have difficulty donning and doffing shirts and coats. *Id*. at 1, 2, 7. Her condition had become worse since October of 2012. *Id*. at 11. She described feeling "achy all over," like she was "getting old and falling apart…". *Id*. at 1. Examination revealed pain with left shoulder abduction. *Id*. at 2. Cervical spine x-rays were performed and showed degenerative disc disease from C3 to C6. *Id*. at 22. The soft tissue structures were unremarkable and there was no evidence of joint pathology. *Id*. When asked about possible precipitating events, petitioner stated she had a Tdap vaccination in her left shoulder in April 2012, one day before all the pain began. *Id*. at 2, 11. Dr. Cleofe questioned whether petitioner had a gradual, insidious onset of rotator cuff disease. *Id*. at 1. He recommended an eight-week course of treatment involving myofascial release therapy, shoulder rehabilitation protocols, and TMJ soft tissue therapy. *Id*. at 2.

Petitioner presented for chiropractic treatments in February and March and was "feeling really good." *See* Pet. Ex. 3 at 26-43.  She presented to Dr. Boll's office on April 2, 2013 for upper respiratory complaints. Pet. Ex. 4 at 6, 8.  She continued with chiropractic treatment through April 2013. Pet. Ex. 3 at 45-54. On April 22, 2013, petitioner reported left jaw pain which began in April 2012, "about the same time when L shoulder pain came about." *Id*. at 53. Her left arm and shoulder pain was improving, and she wished to continue treatment for her left shoulder. *Id*. She returned regularly for treatment through May and June 2013. *Id*. at 55-66. She continued treatment thereafter, at times reporting increased pain from "doing planks," after 18 holes of golf, or reaching for something. *Id*. at 61, 67, 68, 89. Petitioner continued with chiropractic treatment through 2017. *Id*. at 90-189.

In a Statement dated April 2015 but signed and notarized on August 7, 2017, petitioner claimed that she had pain the moment the Tdap vaccine was given. She stated that within 24-48 hours, she called Dr. Boll's office about her symptoms and was advised to use over the counter medications and ice. Pet. Ex. 8 at 2-3, 6. Her pain continued, and it began to radiate from her shoulder to her neck and jaw. *Id*. She discussed her pain and symptoms with her family and went to see Dr. Boll on February 27, 2012 to discuss the symptoms she was experiencing since receiving the Tdap vaccine. *Id*. at 3. She then sought treatment from a neurologist, orthopedist, and chiropractor. *Id*. at 3-5.  She stated that she was diagnosed with "symptoms of frozen shoulder, adhesive capsulitis and shoulder bursitis" and that an MRI indicated there was a "partial tear and inflammation around the deltoid muscle and/or overlaying tendons which could be the cause of tendonitis." *Id*. at 5.

None of the claimed events or conditions submitted by petitioner were contained in her medical records, and the MRI done in August of 2013—18 months after her Tdap vaccination—revealed "minimal heterogeneous change within the supraspinatus tendon" with no evidence of tear of any rotator cuff tendons. Pet. Ex. 3 at 23. The impression was "[t]endinopathy[10]…within the supraspinatus tendon." *Id*. at 24.

 Further, petitioner filed a letter from Dr. Boll dated five years after administration of the subject vaccine, in which he wrote that he did not have access to petitioner's past records "to check the accuracy of dates referenced." Nonetheless, he wrote that petitioner received a Tdap vaccine in his office on February 2, 2012; over the next 24-48 hours, her arm and shoulder became swollen and painful. She called his office and was told by a nurse to take over the counter medication and to ice the area, which did not help. She discussed her continued pain with him at her visit on February 27, 2012, and he referred her to a neurologist. She ultimately developed a frozen shoulder and required a "very long term course of treatment for that problem." He then saw her on June 13, 2012, at which time she still had pain in her shoulder. Pet. Ex. 7 at 1. Dr. Boll failed to provide any explanation for how he remembered these events five years later without the benefit of any records, why he failed to document the details contained in his letter in his medical records, or how his letter contained a recital of events that were strikingly similar to those made by petitioner in her statement. Dr. Boll also failed to explain how he discussed petitioner's shoulder pain with her during a visit on February 27, 2012 when the medical records show that she presented to the nurse practitioner at his office—not him. Pet Ex. 4 at 13, 15; Pet. Ex. 14 at 6, 7.

On November 7, 2017, petitioner filed letters from two co-workers at Carl Sandberg High School, David Kreis, the school's athletic trainer, and Nancy Cassidy, the school nurse. Pet. Ex. 8-9. On December 12, 2017, petitioner filed letters from her mother, Florine Martin, and her husband, Wayne Clavio. Pet. Ex. 10-11. On December 29, 2017, petitioner filed letters from a former co-worker, Yolanda Kolliniatis, and a friend, Jeannie Murawski. Pet. Ex. 12-13.

A status conference was held on July 31, 2018, during which I discussed the various ways to exit the Vaccine Program, including the filing of a Motion for Ruling on the Record. *See* ECF No. 24. At the time that counsel substituted in on August 30, 2018, the foregoing evidence was

---

[10] Tendinopathy is any pathologic condition of a tendon. Dorland's Medical Dictionary Online, *Tendinopathy* (last visited Dec. 28, 2023), https://www.dorlandsonline.com/dorland/definition?id=49152&searchterm=tendinopathy.

part of the record, as was an Order detailing the discussion during the status conference, which explains why counsel immediately filed a Motion for Ruling on the Record to address the issue of onset. ECF Nos. 27, 31. In the motion, petitioner argued that her medical records were incorrect and the statements she filed should be given more weight than the medical records, leading to a conclusion that she satisfied the 48-hour onset requirement for a Table SIRVA. *See generally* ECF No. 31.

As more specifically detailed in the Ruling on Onset, the statements submitted in this matter lacked the foundation upon which these individuals' memories were based and were given less weight when compared to petitioner's reporting to her medical providers that the onset of her shoulder pain was spontaneous and in April of 2012, two months after receipt of the Tdap vaccine. Ruling on Onset at 7-9, 10-14; Pet. Ex. 4 at 9; Pet. Ex. 14 at 12; Pet. Ex. 2 at 3; Pet. Ex. 5 at 10; Pet. Ex. 4 at 32; Pet. Ex. 14 at 15; Pet. Ex. 3 at 11.

After the Ruling on Onset issued, petitioner filed a Motion for Ruling on the Record. Pet. Ex. 15-19; *see* ECF 44. As fully explained in the Decision dismissing the petition, petitioner failed to satisfy the Table requirements for a SIRVA claim. *See generally* Dismissal Decision.

While the evidence was insufficient for a ruling in favor of petitioner, a finding of reasonable basis requires a mere scintilla of objective evidence to support a feasible claim—a burden that is much lower than the preponderance of evidence standard required for entitlement. It is well-established that an expert report addressing causation is not necessary to show that a claim had reasonable basis. *James-Cornelius*, 984 F.3d at 1379-80. Further, the Federal Circuit explained in *James-Cornelius* that affidavits or sworn statements may provide objective evidence supporting a claim in the Vaccine Program, particularly when they contain statements as to facts within the affiant's personal knowledge, such as "the receipt of a vaccine and the timing and severity of symptoms." *Id*. at 1380-81.

Petitioner submitted multiple statements from family, friends, and co-workers in support of the Table SIRVA claim and to corroborate her claim that she had an immediate onset of shoulder pain following receipt of the Tdap vaccine. Had I found these statements more persuasive, petitioner would have been entitled to the presumption of causation afforded to those who are able to show that they suffered an injury within the timeframe specified on the Vaccine Injury Table. *Knudsen by Knudsen v. Sec'y of Health & Human Servs*., 35 F.3d 543, 547 (Fed. Cir. 1994). However, I afforded little weight to the sworn statements in the Ruling on Onset for reasons detailed therein. Nevertheless, the numerous sworn statements filed by petitioner constitute objective evidence in support of her Table SIRVA claim, sufficient to satisfy reasonable basis.

When she substituted in as counsel, Attorney Durant presumably assessed the merits of petitioner's claim and promptly moved for a Ruling on Onset followed by a Ruling on the Record. Thus, the appearance of counsel in this matter brought it to its appropriate conclusion.

Special masters have underscored the importance of awarding attorneys' fees to encourage the participation of competent legal counsel in the Vaccine Program. As the Special Master stated in *Iannuzzi v. Sec'y of Health & Human Servs*.:

> Simply put, the ultimate purpose of Vaccine Act fees and costs awards is *not* to benefit the *attorneys* involved, but to *ensure that Vaccine Act petitioners will have adequate access to competent counsel*. . . Accordingly, when attorneys spend a reasonable amount of time and costs in representing Vaccine Act petitioners, such attorneys must be fairly compensated for their expenditures, in order to encourage attorneys to participate in future Vaccine Act cases.

No. 02-780V, 2007 WL 1032379, at \*11 (Fed. Cl. Spec. Mstr. Mar. 20, 2007), *rev'd in part*, 78 Fed. Cl. 1 (2007) (emphasis in original); *see also James-Cornelius*, 984 F.3d at 1381 (in exercising her discretion to award attorneys' fees, the special master must keep in mind the remedial objective of maintaining petitioners' access to willing and qualified legal assistance).

For the foregoing reasons, the undersigned finds that there was a reasonable basis for the filing of the petition and during the pendency of the matter until it was dismissed.

## IV.     Reasonable Attorneys' Fees

The Federal Circuit has approved use of the lodestar approach to determine reasonable attorneys' fees and costs under the Vaccine Act. *Avera v. Sec'y of Health & Human Servs*., 515 F.3d 1343, 1349 (Fed. Cir. 2008). Using the lodestar approach, a court first determines "an initial estimate of a reasonable attorneys' fee by 'multiplying the number of hours reasonably expended on the litigation times a reasonable hourly rate.'" *Id*. at 1347-48 (quoting *Blum v. Stenson*, 465 U.S. 886, 888 (1984)). Then, the court may make an upward or downward departure from the initial calculation of the fee award based on other specific findings. *Id*. at 1348.

Counsel must submit fee requests that include contemporaneous and specific billing records indicating the service performed, the number of hours expended on the service, and the name of the person performing the service. *See Savin v. Sec'y of Health & Human Servs*., 85 Fed. Cl. 313, 316-18 (2008). Counsel should not include in their fee requests hours, including those by paralegals, that are "excessive, redundant, or otherwise unnecessary." *Saxton v. Sec'y of Health & Human Servs.*, 3 F.3d 1517, 1521 (Fed. Cir. 1993) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983)). It is "well within the special master's discretion to reduce the hours to a number that, in [her] experience and judgment, [is] reasonable for the work done." *Id*. at 1522.

Furthermore, the special master may reduce a fee request sua sponte, apart from objections raised by respondent and without providing petitioner notice and opportunity to respond. *See Sabella v. Sec'y of Health & Human Servs*., 86 Fed. Cl. 201, 209 (2009). A special master need not engage in a line-by-line analysis of petitioner's fee application when reducing fees. *Broekelschen*, 102 Fed. Cl. at 729.

In addition to fees, attorneys' costs must be reasonable as well. *See Perreira v. Sec'y of Health & Human Servs.*, 27 Fed. Cl. 29, 34 (1992) ("The conjunction 'and' conjoins both 'attorneys' fees' and 'other costs' and the word 'reasonable' necessarily modifies both. Not only must any request for reimbursement of attorneys' fees be reasonable, so also must any request for reimbursement of costs."). An expert retained by a petitioner in the Vaccine Program will only be compensated at a reasonable hourly rate, and petitioner has the burden of demonstrating that the

expert costs incurred were reasonable. *Simon v. Sec'y of Health & Human Servs.*, No. 05-941V, 2008 WL 623833, at \*2 (Fed. Cl. Spec. Mstr. Feb. 21, 2008).

## A.   Reasonable Hourly Rates

A "reasonable hourly rate" is defined as the rate "prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." *Avera*, 515 F.3d at 1348 (quoting *Blum*, 465 U.S. at 896 n.11). In general, this rate is based on "the forum rate for the District of Columbia" rather than "the rate in the geographic area of the practice of petitioner's attorney." *Rodriguez v. Sec'y of Health & Human Servs.*, 632 F.3d 1381, 1384 (Fed. Cir. 2011) (citing *Avera*, 515 F. 3d at 1349). There is a "limited exception" that provides for attorneys' fees to be awarded at local hourly rates when "the bulk of the attorney's work is done outside the forum jurisdiction" and "there is a very significant difference" between the local hourly rate and forum hourly rate. *Id.* This is known as the *Davis County* exception. *Hall v. Sec'y of Health & Human Servs.*, 640 F.3d 1351, 1353 (2011) (citing *Davis Cty. Solid Waste Mgmt. & Energy Recovery Special Serv. Dist. v. U.S. EPA*, 169 F.3d 755, 758 (D.C. Cir. 1999)).

For cases in which forum rates apply, *McCulloch* provides the framework for determining the appropriate hourly rate range for attorneys' fees based upon the attorneys' experience. *McCulloch v. Sec'y of Health & Human Servs.*, No. 09-293V, 2015 WL 5634323 (Fed. Cl. Spec. Mstr. Sept. 1, 2015). The Office of Special Masters has accepted the decision in *McCulloch* and has issued a Fee Schedule for subsequent years.[11]

On behalf of Attorney Durant, petitioner requested an hourly rate of $377 for 2018, $380 for 2019, $395 for 2020, $420 for 2021, and $441 for 2022. *See generally* Motion for Fees. For Attorney Mike Milmoe, she requested an hourly rate of $455 for 2018, $464 for 2019, and $484 for 2020. For "AR", she requested an hourly rate of $160 for 2020 and $173 for 2022. Finally, for Summer Abel, petitioner requested an hourly rate of $260 for 2020. *Id*. I find these rates to be reasonable and consistent with what has been previously awarded. *See, e.g., Hanna v. Sec'y of Health & Human Servs.*, No. 18-1455V, 2023 WL 5791631, at \*2 (Fed. Cl. Spec. Mstr. July 26, 2023); *Koropatny v. Sec'y of Health & Human Servs.*, No. 17-1240V, 2022 WL 4517878, at \*2 (Fed. Cl. Spec. Mstr. Aug. 31, 2022); *Culp v. Sec'y of Health & Human Servs.*, No. 18-1315V, 2020 WL 4199040, at \*2 (Fed. Cl. Spec. Mstr. Apr. 24, 2020); *Stoliker v. Sec'y of Health & Human Servs.*, No. 17-990V, 2021 WL 1605960, at \*2 (Fed. Cl. Spec. Mstr. Mar. 24, 2021). As such, no adjustment is needed.

## B.   Hours Reasonably Expended

Attorneys' fees are awarded for the "number of hours reasonably expended on the litigation." *Avera*, 515 F.3d at 1348. Counsel should not include in their fee requests hours that are "excessive, redundant, or otherwise unnecessary." *Saxton ex rel. Saxton v. Sec'y of Health & Human Servs.*, 3 F.3d 1517, 1521 (Fed. Cir. 1993) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983)). "Unreasonably duplicative or excessive billing" includes "an attorney billing for a

---

[11] The 2015-2023 Fee Schedules can be accessed at http://www.cofc.uscourts.gov/node/2914. The hourly rates contained within the schedules are updated from the decision in *McCulloch v. Sec'y of Health & Human Sers.,* No. 09-923V, 2015 WL 5634323 (Fed. Cl. Spec. Mstr. Sept. 1, 2015).

single task on multiple occasions, multiple attorneys billing for a single task, attorneys billing excessively for intra office communications, attorneys billing excessive hours, [and] attorneys entering erroneous billing entries." *Raymo v. Sec'y of Health & Human Servs*., 129 Fed. Cl. 691, 703 (2016). While attorneys may be compensated for non-attorney-level work, the rate must be comparable to what would be paid for a paralegal. *O'Neill v. Sec'y of Health & Human Servs*., No. 08-243V, 2015 WL 2399211, at *9 (Fed. Cl. Spec. Mstr. Apr. 28, 2015). Clerical and secretarial tasks should not be billed at all, regardless of who performs them. *McCulloch*, 2015 WL 5634323, at *26. Hours spent traveling are ordinarily compensated at one-half of the normal hourly attorney rate. *See Scott v. Sec'y of Health & Human Servs*., No. 08-756V, 2014 WL 2885684, at *3 (Fed. Cl. Spec. Mstr. June 5, 2014) (collecting cases). And "it is inappropriate for counsel to bill time for educating themselves about basic aspects of the Vaccine Program." *Matthews v. Sec'y of Health & Human Servs*., No. 14-1111V, 2016 WL 2853910, at *2 (Fed. Cl. Spec. Mstr. Apr. 18, 2016). Ultimately, it is "well within the Special Master's discretion to reduce the hours to a number that, in [her] experience and judgment, [is] reasonable for the work done." *Saxton*, 3 F.3d at 1522. In exercising that discretion, special masters may reduce the number of hours submitted by a percentage of the amount charged. *See Broekelschen*, 102 Fed. Cl. at 728-29 (affirming the Special Master's reduction of attorney and paralegal hours); *Guy v. Sec'y of Health & Human Servs*., 38 Fed. Cl. 403, 406 (1997) (same).

Interim fees were not awarded in this case. Thus, the Motion for Fees requested reimbursement for fees incurred since the inception of the case.

In total, petitioner requested $20,405.30 in fees. Motion for Fees at 1, 7. Upon review of the hours billed by Attorney Durant and her co-workers, I find that their time was appropriately documented with specificity and their billing records did not contain charges for impermissible tasks, such as administrative duties or time spent learning about the Program. Further, counsel appropriately began billing in this matter immediately prior to her motion to substitute in as petitioner's attorney of record. *Id*. at 2. Therefore, no reduction is warranted.

As previously noted, petitioner did not seek any amount for litigation costs in this matter. Motion for Fees at 1. As such, no costs are awarded.

## V.    Conclusion

Based on the foregoing, petitioner's Motion for Attorneys' Fees is **GRANTED.** The undersigned finds that it is reasonable to compensate petitioner and her counsel for a **total award of attorneys' fees in the amount of $20,405.30**.

Accordingly, the undersigned awards:

> A lump sum payment of $20,405.30, representing reimbursement for petitioner's attorneys' fees in the form of a check payable jointly to petitioner and her counsel of record, Leah V. Durant of the Law Offices of Leah V. Durant, PLLC.

The Clerk of the Court is directed to enter judgment in accordance with this Decision.[12]

**IT IS SO ORDERED.**

**s/ Mindy Michaels Roth**
Mindy Michaels Roth
Special Master

---

[12] Pursuant to Vaccine Rule 11(a), entry of judgment can be expedited by each party filing a notice renouncing the right to seek review.